NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY PLOTNICK, on behalf of himself, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMPUTER SCIENCES CORPORATION DEFERRED COMPENSATION PLAN FOR KEY EXECUTIVES, and COMPUTER SCIENCES CORPORATION,<br><br>Defendants. | Civil Action No. 2:14-cv-0303 (KM)(CLW)<br><br>**REPORT AND RECOMMENDATION** |

**WALDOR, United States Magistrate Judge**

The Honorable Kevin McNulty, U.S.D.J., referred Defendants' motion to transfer venue to this Court to issue a report and recommendation pursuant to 28 USC § 636(b)(1) and Local Civil Rule 72.1(a)(2). For the reasons set forth below, this Court respectfully recommends that the District Judge grant the motion to transfer venue.

**I.     Background**

On January 15, 2014, Jeffrey Plotnick ("Plaintiff") filed suit against the Computer Sciences Corporation Deferred Compensation Plan for Key Executives ("CSC Plan") and Computer Sciences Corporation ("CSC" and, collectively, "Defendants") pursuant to the Employee Retirement Income Security Act ("ERISA"). (Compl. ¶¶ 1-12, ECF No. 1.) Plaintiff is a retired former employee of CSC who maintains a residence in Atlantic City, New Jersey, while CSC is an information technology services provider with offices in New Jersey and corporate headquarters in Falls Church, Virginia. (Compl. ¶¶ 10-12; Def. Mem. at 4, ECF No. 13; Nunez Decl. ¶ 1, ECF

No. 13-1.) Plaintiff presents class action allegations and claims for relief under ERISA. (Compl. ¶¶ 13-32, 102-130.) Plaintiff's claims concern CSC's alleged breach of the CSC Plan by retroactively applying an amendment adopted after Plaintiff's retirement. (Compl. ¶¶ 1-6, 33-101.)

On March 21, 2014, Defendants moved to transfer venue to the Eastern District of Virginia pursuant to 28 USC § 1404. (ECF Nos. 12, 13.) On June 30, 2014, Plaintiff opposed Defendants' motion to transfer venue. (ECF Nos. 28, 29.) On July 17, 2014, Defendants filed a reply memorandum in support of their motion to transfer venue. (ECF No. 32.) On July 31, 2014, the District Judge referred the matter to this Court for a report and recommendation. The Court declined to hear oral argument pursuant to Fed.R.Civ.P. 78.

## II. Discussion

### A. Legal Standard

A court "may transfer any civil action to any other district where it might have been brought" if transfer serves the "the convenience of the parties and witnesses" and "the interest of justice." 28 USC § 1404(a). "The purpose of § 1404(a) is to avoid the waste of time, energy and money and, in addition, to safeguard litigants, witnesses, and the public against avoidable inconvenience and expense." Rappoport v. Steven Spielberg, Inc., 16 F.Supp.2d 481, 497 (D.N.J. 1998). The moving party bears the burden to establish that the transfer is appropriate and that the alternate forum is more convenient than the present forum. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). "The decision of whether to transfer a case is committed to the trial court's sound discretion." Prudential Ins. Co. of Am. v. Brimberry, 2013 WL 5340378, at *2 (D.N.J. Sept. 23, 2013) (citations omitted).

The Third Circuit recognized that "courts have not limited their consideration to the three enumerated factors in § 1404(a)." Jumara, 55 F.3d at 879. Accordingly, to determine whether

2

transfer is appropriate, the Court may examine private interests such as: 1) the plaintiff's forum preference; 2) the defendant's forum preference; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses; and 6) the location of books and records. Id. (citations omitted). Further, the Court may consider public interests such as: 1) the enforceability of the judgment; 2) practical considerations that could make the trial easy, expeditious, or inexpensive; 3) the relative administrative difficulty in the two fora from court congestion; 4) the local interest in deciding controversies at home; 5) the public policies of the fora; and 6) the familiarity of the trial judge with the applicable state law in diversity cases. Id. at 879-80 (citations omitted).

**B.     Analysis**

**i.     Possibility of Venue in Eastern District of Virginia**

First, the Court considers whether this action might have been brought in the Eastern District of Virginia. Plaintiff filed suit in the District of New Jersey pursuant to ERISA, 29 USC § 1132(e)(2). (Compl. ¶ 9.) Section 1132(e)(2) provides, in pertinent part, that actions under ERISA "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." Defendants contend that "venue is proper in the Eastern District of Virginia because that is where CSC is headquartered, where the Plan is administered, and where every major decision that will be at issue in this case was made." (Def. Mem. at 9-10, ECF No. 13.) Defendants rely on declarations to support this contention. (Def. Mem. at 4-10; Nunez Decl. ¶¶ 1-8, ECF No. 13-1; Turilli Decl. ¶¶ 1, 4-7, ECF No. 13-9; Love Decl. ¶¶ 1, ECF No. 13-10.) Upon review of the record and the requirements of § 1132(e)(2), the Court is satisfied that the instant matter might have been brought in the Eastern District of Virginia.

### ii. Private Factors in Assessing Transfer

Pursuant to § 1404(a), the Court examines the relative convenience of the parties as well as "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879. The Court also may consider the location of the relevant books and documents, as well as where the claims at issue in this case "arose." Id. In addition, the Court may consider "plaintiff's forum preference as manifested in the original choice." Id. The Court's inquiry is individualized: "there is no rigid rule governing a court's determination [and] each case turns on its facts." Lawrence v. Xerox Corp., 56 F.Supp.2d 442, 450 (D.N.J. 1999) (citing Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988)) (internal citations and punctuation omitted).

The Court is mindful that Plaintiff resided "in New Jersey for thirteen (13) years of his [nearly 28 years of] employment with CSC[,] spent more years in New Jersey while a participant in the Plan than in any other location during his tenure at CSC," and continues to maintain a part-time residence in New Jersey. (Compl. ¶¶ 10-12, 54-56.) On August 26, 2009, however, Plaintiff changed his permanent residence within the CSC system from Medford, New Jersey to Jacksonville, Alabama, and listed a contact phone number with an Alabama area code. (Schroeder Decl. ¶¶ 5-9, ECF Nos. 32-3, 32-4, 32-5.) Plaintiff's tax statements for the tax years of 2010, 2011, and 2012 indicate that he received state wages only in Alabama; Plaintiff retired from CSC on September 4, 2012 and paid Alabama state withholding on subsequent CSC Plan payments he received. (Love Decl. ¶¶ 4-10, ECF Nos. 32-6, 32-7, 32-8.) Plaintiff's diminished presence in New Jersey weighs in favor of transfer.

In January 2008, CSC moved its headquarters to Falls Church, Virginia. (Turilli Decl. ¶ 3, ECF No. 32-1.) CSC employs about 1,000 people in New Jersey, as opposed to 4,000 people in

Virginia and about 7,600 employees altogether in Washington, D.C., Maryland, and Virginia. (Schroeder Decl. ¶ 4, ECF No. 32-3.) CSC's gross revenues in New Jersey are about one-third of those in Virginia and about one-half of those in Maryland. (Rohleder Decl. ¶ 3, ECF No. 32-2.) Moreover, of the one hundred thirty seven (137) CSC Plan participants contemplated by Plaintiff's class action allegations, twenty-six (26) reside in Virginia, sixteen (16) reside in Maryland, and seven (7) reside in New Jersey.[1] (Love Decl. ¶¶ 3-5, ECF No. 13-10.) Defendants emphasize that CSC administers the Plan at its headquarters, "[a]ll documents relating to the Plan amendment [. . .] are located at or can be easily made available at CSC's headquarters[, and s]uch documents are not stored or located in New Jersey in the ordinary course of business." (Turilli Decl. ¶ 7, ECF No. 13-9; Nunez Decl. ¶¶ 2-8, 12, ECF No. 13-1.) In addition, communications to Plaintiff and other Plan participants originated at CSC's headquarters. (Love Decl. ¶ 3, ECF No. 32-6.) The concentration of Defendants' operations—i.e., people, documents, and activities giving rise to the instant action—as well as the relative concentration of Plan members in proximity to the Eastern District of Virginia weigh heavily in favor of transfer.

Plaintiff opted to commence this action in the District of New Jersey, where CSC employed Plaintiff and continues to conduct business and where Plaintiff resided during his employment and continues to reside on a part-time basis. While Plaintiff's preference generally weighs against transfer, the weight accorded to Plaintiff's choice of forum is mitigated where the facts central to the lawsuit occurred elsewhere. In re Consolidated Parlodel Litig., 22 F.Supp.2d 320, 323-24 (D.N.J. 1998). Moreover, Plaintiff's choice of forum is afforded less deference because he is suing on behalf of a putative class and, even if heightened deference nevertheless applies to Plaintiff's

---

[1] Plaintiff submits a Declaration disputing these figures and contending that members of the proposed class reside, in part, as follows: one hundred twenty (120) total participants, with twenty-one (21) in Virginia, fifteen (15) in Maryland, and seven (7) in New Jersey. (Peinert Decl. ¶ 3, ECF No. 28-10.)

5

forum choice by virtue of ERISA, such deference does not defeat the "need for a balanced analysis, or prohibit the Court from transferring the matter when convenience and justice strongly favor transfer." Santomenno v. Transamerica Life Ins. Co., 2012 WL 1113615, at *4-6 (D.N.J. Mar. 30, 2012) (collecting cases and discussing deference to a plaintiff's choice of forum generally and in ERISA cases). The Court concludes that, in light of § 1404(a) and the private factors set forth by the Third Circuit, transfer serves the convenience of the parties and witnesses and the interest of justice.

### iii.   Public Factors in Assessing Transfer

The Court's conclusion is unchanged by the public factors applicable to a transfer analysis. See Jumara, 55 F.3d at 879-80. First, there is no indication that a party would have difficulty enforcing a judgment in either the District of New Jersey or the Eastern District of Virginia. Next, with respect to "practical considerations that could make the trial easy, expeditious, or inexpensive," Id. at 879, the Court finds that, as discussed above, the concentration of Defendants' operations in proximity to the Eastern District of Virginia weighs heavily in favor of transfer. Third, the Court may consider "the relative administrative difficulty in the two fora resulting from court congestion." Id. Although the parties submitted competing accounts of the districts at issue, the Court is not convinced that either district's docket or case processing differs so materially as to weigh against or in favor of transfer. The fourth and fifth public interest factors concern each fora's "local interest" and applicable public policies. Id. The Court finds that both New Jersey and Virginia have the same competing "local interest" regarding the affairs of their citizens and resident corporations. This factor is, therefore, neutral to the Court's analysis. Finally, the Court may examine "the familiarity of the trial judge with the applicable state law in diversity cases." Id. at 879-80. This is not a diversity case, however, as this Court has subject matter jurisdiction

pursuant to ERISA. The Court is confident in another District or Magistrate Judge's ability to interpret and apply the law. The Court finds this factor to be neutral in its analysis.

## III. Conclusion

In light of the foregoing, the Court concludes that Defendants have met their burden to demonstrate that transfer is appropriate under 28 U.S.C. § 1404(a). The Court accordingly recommends that the District Judge grant Defendants' motion to transfer venue to the Eastern District of Virginia. The parties have ten (10) days to file and serve objections to this report and recommendation pursuant to Local Rule 72.1(c)(2) from the date the transcript is filed with the Clerk of the Court.

s/ Cathy L. Waldor
**CATHY L. WALDOR**
**UNITED STATES MAGISTRATE JUDGE**